**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jean D. LITTLEFIELD,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**George G. NICOLADZE,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Fred F. SOLOMON, Jr.,**
**Defendant-Appellant.**

Nos. 83–1154, 83–1160 and 83–1175.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1984.

Decided Feb. 5, 1985.

As Amended on Denial of Rehearing
March 29, 1985.

James Springer, Dept. of Justice, Washington, D.C., for U.S.

Geoffrey Hansen, Asst. Federal Public Defender, San Francisco, Cal., for defendant-appellant Jean D. Littlefield.

Stephen Kaus, Kaus & Kerr, San Francisco, Cal., for defendant-appellant George C. Nicoladze.

Peggy A. Stone, Oakland, Cal., for defendant-appellant Fred F. Solomon.

Before GOODWIN, WALLACE and BOOCHEVER, Circuit Judges.

GOODWIN, Circuit Judge.

Littlefield, Nicoladze, and Solomon appeal their convictions for conspiracy to violate the tax laws and for various tax-related criminal offenses arising from tax shelter activities. We remand for a new trial because a *Time* magazine article on similarly fraudulent tax shelters was carried by one of the jurors into the jury room during deliberations and was read and discussed by one or more of the other jurors.

Because defense counsel all knew of the publication of the *Time* article before the verdict was announced (although they did not know it had been carried into the jury room), the government argues that they have waived any right to seek a new trial. Defense counsel contend they were entitled to rely on the general cautionary instructions to the jury. We believe the case comes close to the disfavored practice of testing the verdict and then complaining if it goes against one's side, but in this case there was no waiver in the technical sense.

The interest in fair administration of justice weighs against holding that defendants waived any opportunity to seek second trial

in this case, even though a second trial could perhaps have been avoided had the defense immediately notified the court of the publication of the article. *See United States v. Rattenni,* 480 F.2d 195, 197 (2d Cir.1973) (dereliction by defense counsel is not grounds to let tainted verdict stand). *But see United States v. Dean,* 667 F.2d 729, 732–34 (8th Cir.) (en banc 4–3 vote), *cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982) (defense waived right to seek a second trial because it did not report to the court its receipt of an anonymous note during trial indicating jury bias). We note that the article did not deal specifically with defendants, and defense counsel had no specific knowledge before the verdict that extrinsic material had been carried into the jury room. Supporting the Second Circuit's position is the Sixth Amendment requirement that the evidence against an accused be subject to judicial control and the Rules of Evidence. *Turner v. Louisiana,* 379 U.S. 466, 472–73, 85 S.Ct. 546, 549–50, 13 L.Ed.2d 424 (1965). We accept that view.

Pursuant to *Gibson v. Clanon,* 633 F.2d 851, 855 (9th Cir.1980), *cert. denied,* 450 U.S. 1035, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981), the district judge determined that it could be concluded beyond a reasonable doubt that the extrinsic material did not influence the verdict. We reverse because this conclusion was based on factual findings that were clearly erroneous. *See* Fed. R.Civ.P. 52(a).

The government argues that *Gibson* is no longer good law, and cites the recent Sixth Circuit case of *United States v. Pennell,* 737 F.2d 521, 532–33 (6th Cir.1984), for the proposition that defendants rather than the government bear the burden of proving jury partiality in a hearing on the matter. We believe that this argument misinterprets the meaning of *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

In *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), the Supreme Court placed the burden of proof on the government to overcome a presumption of prejudice where there is "any private communication, contact or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury." 347 U.S. at 229, 74 S.Ct. at 451. In a hearing to determine whether contact with a juror was harmless, "the burden rests heavily upon the Government to establish ... that such contact with the juror was harmless to the defendant." *Id.* The government and the Sixth Circuit maintain that *Phillips* overruled *Remmer* by holding that the remedy for allegations of juror partiality is a hearing "in which the defendant has the opportunity to prove actual bias." 455 U.S. at 215, 102 S.Ct. at 945; *Pennell,* 737 F.2d at 532. But, the Supreme Court expressly upheld the *Remmer*-type burden of proof; it held that determinations of jury partiality "may properly be made at a hearing like that ordered in *Remmer* and held in this case." 455 U.S. at 217, 102 S.Ct. at 946. Quite simply, the government (and the Sixth Circuit) misread the *Phillips* "opportunity to prove actual bias" as a shifting of the burden of proof to the defendant. Recent decisions from a number of circuits, and the Supreme Court's reliance in *Phillips* on *Remmer,* point clearly to the continued vitality of the rule that the government must bear the burden of proof in showing that jury partiality was harmless. *Owen v. Duckworth,* 727 F.2d 643, 646 (7th Cir.1984) (once the defendant has proved the extrajudicial contact with the jury, the government has the burden of rebutting a presumption of prejudice); *United States v. Delaney,* 732 F.2d 639, 642 (8th Cir.1984) (burden on the government to rebut a presumption of prejudice); *United States v. Hillard,* 701 F.2d 1052, 1064 (2d Cir.), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983) (a presumption of prejudice can be rebutted only by a showing that the information the jury received was harmless); *United States v. Weiss,* 579 F.Supp. 1224, 1237 (S.D.N.Y.1983) (government must make an affirmative showing of harmlessness); *see also United States v. Flaherty,* 668 F.2d 566, 602 (1st Cir.1981) (heavy burden on the government to show no prejudice).

The *Phillips* case, contrary to the Sixth Circuit's analysis, did not confront the issue of burden or proof but rather concerned the necessity for a hearing on the issue of jury partiality. It was on that issue that the Court discussed the relevance of *Remmer;* its conclusion that the state hearing was constitutionally adequate did not even address the burden of proof issue. *Phillips,* 455 U.S. at 215–18, 102 S.Ct. at 944–46.

■ In light of *Phillips*, therefore, we reject the government's assertion that *Gibson* and *Remmer* are no longer good law. The government had an obligation here to prove beyond a reasonable doubt that the juror's reading of the *Time* magazine article was harmless. *Remmer*, 347 U.S. at 229, 74 S.Ct. at 451; *Gibson*, 633 F.2d at 854–55.

■ The court found that none of the jurors discussed the *Time* magazine article except for foreperson Graves and an unknown person. That finding incorrectly recalls the testimony. Juror Brown testified that there was a discussion among the jurors about the article, and juror Jeffrey testified that juror McGovern told her that she had gotten the magazine from her mother. Juror Jeffrey also testified that the article was examined by other jurors and was "kind of looked at, and opened, and amidst the conversations in there [the jury room]." Juror Brown testified that she saw McGovern reading the article and that McGovern was "engrossed" in it. She remembered McGovern reading parts of the article on tax evasion to other jurors.

Even accepting the court's rejection of Brown's testimony as not credible, the jury was clearly more conversant with the article than the district court's findings would indicate.

The article on tax cheating was the cover story in the magazine. It not only discussed fraudulent schemes that were very similar to the one the defendants were charged with, but described the problem as a growing national concern and deplored the light sentences frequently associated with such schemes. No juror could have brought the magazine into the jury room, nor could have read the magazine in the jury room, without instantly receiving the message that here was something important related to the very case they were trying.

Because of the error in the district court's factual findings, we are forced to hold that the district court's conclusion about the contribution of the extrinsic material to the verdict was wrong. The testimony at the hearing created at least a reasonable doubt about the magazine's influence on the jury's verdict. Because we remand for a new trial on account of the jury misconduct issue, we do not reach defendants' other contentions of error.

■ Although possible jury bias is ground enough for reversal, we must also address appellants' claims that the evidence was constitutionally insufficient to convict. *United States v. Bibbero*, 749 F.2d 581, 585 (9th Cir.1984). If the evidence was insufficient, double jeopardy would preclude retrial. *Id.*

■ We cannot conclude that the evidence was insufficient to show willfulness. *See United States v. Dahlstrom*, 713 F.2d 1423, 1426–27 (9th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984). Viewing the evidence in the light most favorable to the government, the evidence was sufficient for the jury to conclude that the defendants acted not merely negligently, but willfully, as required by 26 U.S.C. §§ 7206(1), 7206(2).

We accordingly remand this case for a new trial. Any subsequent appeal of the matter will be referred to this panel.

WALLACE, Circuit Judge, dissenting:

The district judge held a hearing to determine whether the *Time* magazine article influenced the jury's verdict and concluded beyond a reasonable doubt that it did not, in part because he found that none of the jurors discussed the *Time* magazine article together. I conclude that this finding of fact is not clearly erroneous, and thus I dissent from the majority's holding that there was "at least a reasonable doubt about the magazine's influence on the jury's verdict." Maj. op. at 1432.

The Court has stated "that due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable." *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982). The Court suggested that the government meets its burden of proof in a partiality hearing if it shows that the "jury [was] capable and willing to decide the case solely on the evidence before it, and [the] trial judge [was] ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.*

The district judge explored the effect of the *Time* magazine article on the jury's impartiality. He found that "the uncontradicted testimony of all the jurors" was that "no juror discussed the *Time* magazine article with any other juror at any time during the trial or deliberations, except an unknown person, whom [juror] Brown said was hearing from [juror] Graves." The majority has decided to overturn the trial judge's conclusion that the magazine article did not influence the jury's verdict on the ground that this finding of fact is clearly erroneous. Maj. op. at 1432. Alternatively, the majority reverses on the ground that "the jury was clearly more conversant with the article than [the sum of] the district court's findings would indicate." Maj. op. at 1432.

I cannot agree with either ground. Although the district judge failed to mention juror Brown's testimony that she also observed juror McGovern discussing the article with other jurors, it is clear from reading the transcript of the hearing that the judge did not believe any of Brown's testimony. Moreover, although juror Jeffrey testified that McGovern had told her that she had obtained the magazine from her mother, Jeffrey never testified that the two had discussed the article. The record is also clear that Jeffrey's cryptic statement that the article was "kind of looked at, and opened, and amidst—amidst the conversations in there" referred solely to her having glanced through the magazine in the noisy setting of the jury room, and not to any conversations taking place about the article among the jurors. Thus, the district judge's finding of fact concerning the lack of conversations about the article was not clearly erroneous.

I also do not conclude that the sum of the district judge's findings is clearly erroneous. His findings indicate that only three members of the jury knew the article existed. What the majority objects to, therefore, is not the sum of the district judge's findings of fact, but his conclusion that, despite these findings, the article did not influence the jury's judgment beyond a reasonable doubt. The Court in *Phillips* stressed that appellate courts should not reverse a jury impartiality decision merely because they believe there was some scintilla of doubt concerning the influence of extrinsic evidence. *See* 455 U.S. at 217–18,

102 S.Ct. at 946. I believe the majority fails to follow this sound advice. In this case at least, I would defer to the district judge's conclusion that the magazine did not influence the jury's verdict beyond a reasonable doubt.