**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Darrell L. HARBER, Defendant–
Appellant.**

No. 93–10665.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 16, 1994.

Decided April 13, 1995.

Michael Morales, Phoenix, AZ, for defendant-appellant.

Matthew F. Heffron (argued) and Joan G. Ruffennach (on the briefs) Asst. U.S. Attys., Phoenix, AZ, for plaintiff-appellee.

Before: ALARCON, HALL, Circuit Judges and KING *, Senior District Judge.

Opinion by Judge ALARCON; Concurrence by Judge HALL.

ALARCON, Circuit Judge:

Darrell Harber and six co-defendants were charged with conspiracy to launder money in violation of 18 U.S.C. §§ 371 and 1956(a)(3)(B). Harber was found guilty after a trial by jury. Following discharge of the jury, counsel for the parties learned that a copy of the case agent's report was present in the jury room during deliberations. The 56–page case agent's report was not admitted into evidence at trial.

Harber seeks reversal of the judgment of conviction on two grounds. First, Harber argues that the district court abused its discretion in denying his motion for a severance. Second, Harber contends that the presence of the case agent's report in the jury room during deliberations had a prejudicial impact on its verdict.

We hold that the intrusion into the jury room of a case agent's report containing a summary of his investigation and his opinion that the suspects are guilty was inherently or presumptively prejudicial. We conclude that members of the jury read the case agent's report. We reverse because the Government has not met its burden of persuading us beyond a reasonable doubt that the impact of the case agent's report on the jury's verdict was harmless. We do not reach the question whether the district court abused its discretion in denying Harber's motion for a severance.

I.

PERTINENT FACTS AND PROCEDURAL HISTORY

In 1989, the Federal Bureau of Investigation ("FBI"), in conjunction with the Internal Revenue Service ("IRS"), initiated an undercover operation into money laundering. During this investigation, Special Agent Julian Miller represented himself as a major narcotics dealer who wished to launder millions of dollars he had obtained from illegal drug transactions. The investigation covered two years and involved extensive surveillance of numerous alleged co-conspirators.

On April 17, 1991, the Government charged Harber and nine other persons with violating federal money laundering statutes. Special Agent Harold Roger Pollard of the IRS Criminal Investigation Division was the case agent in this prosecution. He was assigned the task of assisting the prosecution by preparing a report containing a summary of the investigator's reports, transcripts of tapes, documents, and all other evidence gathered during the undercover investigation. Agent Pollard's 56–page report contained the following information: (1) the Government's theory of the case; (2) the personal and criminal history of each of the co-conspirators, including the criminal records of defendants who entered into plea agreements with the Government prior to trial; (3) a summary of all the evidence gathered during the two-year undercover operation; and (4) Agent Pollard's conclusion that Harber committed overt acts in furtherance of the conspiracy, thereby demonstrating his intent to participate in the conspiracy to launder money. Agent Pollard also opined that Harber was guilty of additional crimes *not* charged in the indictment.

During trial, Harber and his co-defendants relied upon the defense of entrapment. Agent Pollard was called as a defense witness by defendant Herb Collins. He testified that he had no personal knowledge concerning Collins' guilt or innocence. Agent Pollard used the case agent's report to refresh his memory regarding defendant Collins' criminal record, military status, occupation and reputation. Agent Pollard was also asked whether he initiated a tax investigation of the informant used by the Government in

---

* Honorable Samuel P. King, United States Senior District Judge, for the District of Hawaii, sitting by designation.

this matter. The district court marked agent Pollard's case agent's report for identification only. Subsequently, the court sustained defendant Joseph Simpson's objection to Collins' motion to admit the case agent's report into evidence.

On March 3, 1993, the jury began its deliberations. On March 4, 1993, at about 8:00 a.m., the jury informed the court that they were deadlocked as to all defendants.[1] The district court gave the jury an *Allen* charge and ordered them to resume their deliberations. On March 5, 1994, the jury returned a guilty verdict against Harber and a co-defendant. The jury acquitted three of the co-defendants.[2] The jury informed the court that it was deadlocked concerning the guilt of Fritz Monsanto. The court granted Monsanto's motion for a mistrial.

Sometime after the trial, two members of the jury informed one of the prosecutors in this matter that the case agent's report was present in the jury room during deliberations. The prosecutor informed defense counsel of the jurors' representation. Harber timely moved for a new trial on the ground that the case agent's report had a prejudicial impact on the jury's verdict and denied him a fair trial. In its opposition to the motion for a new trial, the Government argued that the error was harmless because the information in the case agent's report was cumulative and the evidence heard by the jury during the trial regarding Harber's guilt was overwhelming.

1. The jury sent the following note to the court: "We, the jury, have reached a verdict of hung jury for each defendant. There is a deadlock on all the defendants as we have considered the law, the evidence and the defendants."

2. The jury found Collins not guilty.

3. The record of the hearing on the motion for a new trial reflects the following colloquy:

 THE COURT: I don't know if the Court can even consider what the jury might have done with [the case agent's report] other than it was available to them. Do we know whether or not they reviewed the entire exhibit, portions of it, none of it?
 MR. HEFFRON [the prosecutor]: We don't, Your honor.... For that purpose, perhaps an

The Government also maintained in the district court that an evidentiary hearing was unnecessary. It conceded that the jurors had read the report during their deliberations.[3] In its brief filed in this court, the Government states that it "accepts for purposes of argument that the jury *read and relied* upon the case agent's report during its deliberations." Appellee's Brief at 25 n. 18. (emphasis added).

The district court did not conduct an evidentiary hearing to determine whether the case agent's report was brought to the jury's attention. Subsequently, the court issued a minute order denying the motion for a new trial.

## II.

## DISCUSSION

### A. Extrinsic Material—Presumptive or Specific Prejudice

The Government does not argue that the intrusion of the case agent's report into the jury's deliberations was not erroneous. Instead, the Government asserts that we must affirm because the constitutional error was harmless beyond a reasonable doubt.

The Government relies on cases decided in this circuit prior to the Supreme Court's decision in *United States v. Olano*, — U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), for the proposition that a defendant is entitled to a new trial where extrinsic evidence is presented during a jury's deliberations only if there exists a reasonable possibility that

evidentiary hearing would have been a good idea. The government took the position that because it would be so difficult to find out which juror read what, if anything, that *the government is willing to assume that the jury read the report.*
 THE COURT: But in reporting this to you, neither of those jurors suggested the extent to which it may have been utilized, other than they saw—
 MR. HEFFRON: Not to my knowledge, Your Honor. I didn't talk to either of the jurors. They came in on a Sunday to talk to Mr. Sexton while he was preparing for his next trial. And my understanding from Mr. Sexton is that they mentioned it was in the jury room. I don't believe Mr. Sexton questioned them any further as to how much of it they read. (emphasis added).

the extrinsic material could have affected the verdict. Appellee's Brief at 24. As pointed out by the Government, we applied this test in *United States v. Navarro–Garcia,* 926 F.2d 818, 821 (9th Cir.1991). In *Navarro–Garcia,* the defendant denied knowledge that the trunk of the automobile she was driving contained 344 pounds of marijuana. *Id.* at 820. After the jury returned its verdict of guilty, Navarro–Garcia's attorney filed an affidavit in which he alleged that the foreman reported that a juror had placed 300 pounds in the trunk of her car to determine whether it would have a noticeable effect. *Id.* at 823. According to the foreman's statement, the juror discussed her experiment with the jury. *Id.*

Navarro–Garcia's counsel requested an evidentiary hearing to determine whether the foreman's assertion of juror misconduct was true. The district court denied Navarro–Garcia's motion for a new trial without conducting an evidentiary hearing. *Id.* at 821.

We stated in *Navarro–Garcia* that the district court abused its discretion in denying an evidentiary hearing where the defendant has presented credible evidence that the jury considered extrinsic evidence. *Id.* at 822. We held that "[a]n evidentiary hearing must be granted unless the alleged misconduct could not have affected the verdict or the district court can determine from the record before it that the allegations are without credibility." We also noted that the possibility of prejudice exists "if the extrinsic evidence may have affected the reasoning of even one juror." *Id.* at 821.

In *Olano,* the United States Supreme Court instructed that "[t]here may be cases where an intrusion should be presumed prejudicial." —— U.S. at ——, 113 S.Ct. at 1780. The Court in *Olano* referred, *inter alia,* to *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), and *Parker v. Gladden,* 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1967), to illustrate the principle that some forms of governmental intrusion into a jury's deliberations are inherently or presumptively prejudicial. In *Turner v. Louisiana,* the Court reversed a state criminal conviction because the record showed that two deputy sheriffs, who testified as

principal witnesses for the prosecution concerning the accused's incriminating statements, were also in charge of the jury throughout the trial. 379 U.S. at 467–68, 85 S.Ct. at 547. The Court explained its ruling as follows:

> It is true that at the time they testified in open court Rispone and Simmons told the trial judge that they had not talked to the jurors about the case itself. But there is nothing to show what the two deputies discussed in their conversations with the jurors thereafter. And even if it could be assumed that the deputies never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize the *extreme prejudice inherent* in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution.

*Id.* at 473, 85 S.Ct. at 550 (emphasis added). Thus, in *Turner,* the Court reversed on due process grounds, without requiring a specific showing by the accused that the officers made any prejudicial statements during their service as bailiffs.

In *Parker v. Gladden,* a bailiff who was in charge of a sequestered jury, stated to a juror, in the presence of other members of the panel: "Oh that wicked fellow [petitioner], he is guilty." 385 U.S. at 363, 87 S.Ct. at 470. The bailiff also told another juror that the Supreme Court would correct any error in the trial proceedings if the accused were to be found guilty. *Id.* at 364, 87 S.Ct. at 470. In response to the State's argument that no prejudice was shown, the Supreme Court stated: "[W]e believe that the unauthorized conduct of the bailiff 'involves such a probability that prejudice will result that it is *inherently* lacking in due process'." *Id.* at 365, 87 S.Ct. at 470 (emphasis added) (quoting *Estes v. Texas,* 381 U.S. 532, 542–43, 85 S.Ct. 1628, 1633, 14 L.Ed.2d 543 (1965)). In reaching this determination, the Court stressed that "the official character of the bailiff—as an officer of the court as well as the State—beyond question carries great weight with a jury which he had been shepherding for eight days and nights." *Parker,* 385 U.S. at 365, 87 S.Ct. at 470.

In a recent case involving the unauthorized presence of two police officers in the jury room to set up a video machine, we stated that "[t]he [Supreme] Court's review of 'intrusion' jurisprudence in *Olano* demonstrates that intrusion should normally be analyzed for its prejudicial impact upon the deliberations." *Lee v. Marshall,* 42 F.3d 1296, 1298–99 (9th Cir.1994). We noted that despite the fact that *Olano* was a "plain error" case, there was "no reason to depart from the Court's explication of intrusion jurisprudence" simply because an attack is collateral. *Id.* at 1299. Likewise in this matter, we must follow the Supreme Court's intrusion jurisprudence, as outlined in *Olano,* although the plain error rule is inapplicable.

In *Lee,* the district court granted a state prisoner's petition for a writ of habeas corpus after concluding that the intrusion by police officers into the jury room during deliberations constituted structural error. *Id.* at 1298. We reversed, citing *Olano* for the proposition that, *"except in the rare egregious case,* an intrusion into the jury's deliberation must be analyzed for its prejudicial impact on the jury's verdict...." *Id.* (emphasis added). The undisputed evidence in *Lee* showed that the officers' only contact with the jury was to answer one juror's question regarding how often the video machine was repaired. *Id.* at 1299.

We found "no hint of prejudice" in *Lee. Id.* The petitioner in *Lee* failed to present any evidence from which it could be inferred that the intrusion of the police officers was inherently or presumptively prejudicial, as was the situation in *Parker* and *Turner.* No showing was made in *Lee* that the police officers, who entered the jury room, communicated with the jurors concerning the guilt of the defendant, as in *Parker,* or were in charge of the jury throughout the trial, as in *Turner.* We recognized in *Lee,* however, that "there may be instances where an intrusion warrants *presumptive prejudice." Id.* (emphasis added).

 The facts presented in this record provide a classic example of presumptive prejudice. Agent Pollard sat in the courtroom as the Government's case agent during a trial that lasted 49 days. He testified at trial that he had prepared his case agent's report based on a review of all the evidence gathered in the investigation. The report also contained his opinion that Harber was guilty of the crimes charged in the indictment, as well as other violations of federal law. His case agent's report was marked for identification, and was relied upon by him, in the presence of the jury, to ensure that his memory of certain details was accurate. Most important, as the Government concedes, the report was read and relied upon by the jury during its deliberations. We are persuaded that extrinsic material consisting of a governmental official's summary of the prosecution's evidence, and his recommendation that an indictment should be requested because the accused is guilty, is inherently or presumptively prejudicial where it is read and relied upon by the jury. To be prejudicial, the extrinsic material must be relevant to the guilt or innocence of the defendant. *United States v. Bagnariol,* 665 F.2d 877, 888 (9th Cir.1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). If the extrinsic evidence is not relevant to the guilt or innocence of the defendant, there is no reasonable possibility that it could have affected the verdict. Here the case agent's report directly connected Harber to crimes charged in the indictment.

In *United States v. Steele,* 785 F.2d 743 (9th Cir.1986), the jury consulted a dictionary during its deliberations without the court's permission. We compared the definitions of the words used in the court's instructions, and the dictionary definition of these terms, before determining that the appellant "could not have suffered any prejudice." *Id.* at 746–49.

In *United States v. Littlefield,* 752 F.2d 1429 (9th Cir.1985), the jury read a magazine article on tax cheating that was not introduced into evidence. The article did not refer to the defendants. We concluded in *Littlefield* that because the report concerned fraudulent schemes similar to the one involved in the alleged crime, specific prejudice had been demonstrated. *Id.* at 1432. Because it is clearly apparent that the case agent's report specifically relates to Harber's connection with the crimes charged in the

indictment, we conclude that its presence in the jury room was inherently or presumptively prejudicial.

## B. Effect on the Jury's Verdict

■ In *Olano*, the Court also cautioned, however, that "a presumption of prejudice as opposed to a specific analysis does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict?" *United States v. Olano*, ⎯ U.S. ⎯, ⎯, 113 S.Ct. 1770, 1780, 123 L.Ed.2d 508 (1993). Previously, in *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), the Supreme Court explained:

> In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial *about the matter pending before the jury* is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. *The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.*

*Id.* at 229, 74 S.Ct. at 451 (emphasis added). Thus, the prejudice that is inherent in the intrusion of a government official's opinion of an accused's guilt into the jury's deliberations can be rebutted by the Government by demonstrating, beyond a reasonable doubt, that the extrinsic material could not have affected the verdict. *Navarro–Garcia*, 926 F.2d at 821.

The law of the Ninth Circuit is consistent with the principles set forth in *Olano* regarding the Government's burden when it is revealed to the trial court that extrinsic material was considered by the jury. These rules can be summarized as follows:

■ **One.** The defendant must demonstrate with credible evidence that extrinsic evidence was introduced into the jury room. *Navarro–Garcia*, 926 F.2d at 823.

■ **Two.** The record must show that one or more jurors were made aware of the contents of the extrinsic material. *See Parker*, 385 U.S. at 366, 87 S.Ct. at 471 ("petitioner was entitled to be tried by 12, not 9 or even 10 impartial and unprejudiced jurors"); *Navarro–Garcia*, 926 F.2d at 821 (possibility of prejudice exists "if the extrinsic evidence may have affected the reasoning of even one juror").

■ **Three.** Where the intrusion into the jury's deliberations is by a law enforcement officer who was a prosecution witness at trial, *Turner*, 379 U.S. at 467–68, 85 S.Ct. at 547, or who made comments regarding the defendant's guilt, *Parker*, 385 U.S. at 363, 87 S.Ct. at 470, prejudice to the defendant's right to due process is inherent or presumptive. *Accord Lee*, 42 F.3d at 1299 ("there may be instances where an intrusion warrants *presumptive prejudice*") (emphasis added). Inherent or presumptive prejudice can be rebutted by the prosecution. *Olano*, ⎯ U.S. at ⎯, 113 S.Ct. at 1780.[4]

■ **Four.** The Government bears the burden of persuading the court beyond a reasonable doubt that the presence of extrinsic material in the jury room during delibera-

---

4. We reversed in *Navarro–Garcia*, because the district court erroneously believed that an evidentiary hearing was not required to consider the merits of a defendant's motion for a new trial " '*unless the defendant can show reliable and clear evidence of jury misconduct*, or, in the absence of such evidence, *show the possibility of prejudice is so great that prudence requires further inquiry*.' " *Navarro–Garcia*, 926 F.2d at 822 (emphasis added). We held in *Navarro–Garcia* that "[t]his ruling was erroneous. An evidentiary hearing must be granted unless the alleged misconduct could not have affected the verdict or the district court can determine from the record before it that the allegations are without credibility." *Id.* at 822. We did not determine in *Navar-*

*ro–Garcia* whether the defendant must show that the evidence improperly injected into the jury deliberations relates directly to a material aspect of the case, before the prosecutor is required to demonstrate beyond a reasonable doubt that there is no reasonable possibility that the jury misconduct affected the verdict. In *Navarro–Garcia*, it was undisputed the experiment conducted by a juror "involved the central disputed issue in the case." *Id.* at 823. We leave to another day resolution of the question whether the burden of persuasion shifts to the prosecution in a matter in which the extraneous material was *not*, as here, *inherently* prejudicial, and no showing has been made that it relates to the issue of guilt.

tions was harmless error. *Navarro–Garcia,* 926 F.2d at 821.

■ Harber has met his burden in this appeal. Harber demonstrated to the district court that extrinsic evidence was presented to the jury.

The Constitution guarantees to an accused that the " 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner,* 379 U.S. at 472–73, 85 S.Ct. at 550. The intrusion into the jury room of a government official's summation of the evidence against an accused, and the officer's conclusion concerning guilt, deprived Harber of his right of confrontation and cross-examination of the declarant of prejudicial material. This extrinsic material was inherently or presumptively prejudicial.

The requirement that the record must show that the extrinsic material was presented to one or more jurors was satisfied in this matter by the Government's concession in the district court that the jurors read the report. In this court, the Government has gone farther and conceded "for purposes of argument that the jury read and relied upon the investigative report during its deliberations." Appellee's Brief at 25 n. 18. This concession obviates the necessity for a remand for an evidentiary hearing.

■ The fact that the introduction of the case agent's report was inherently or presumptively prejudicial, because it contained his views regarding the defendant's guilt, does not end our inquiry. As the Court instructed in *Olano,* we must determine whether the Government has overcome this rebuttable presumption, by presenting evidence that persuades this court beyond a reasonable doubt that the governmental intrusion in this case did not affect the jury's verdict. *Olano,* —— U.S. at ——, 113 S.Ct. at 1780. In meeting its burden, the Government can ask this court to review the entire record to determine if the evidence of guilt was so overwhelming that the jury would have returned a guilty verdict even absent the extrinsic material. *Hughes v. Borg,* 898

F.2d 695, 700 (9th Cir.1990). The Government can also show that the intrusion was harmless by demonstrating that the extrinsic material was duplicative of the evidence introduced at trial. *Id.*

The Government has failed to meet its burden of demonstrating beyond a reasonable doubt that the intrusion of the case agent's report into the jury's deliberations could not have affected the jury's verdict. The Government contends that the evidence of Harber's guilt was overwhelming. This argument is readily refuted by the fact that the jury reported that it was hopelessly deadlocked after deliberating for one day. The Government's argument that the case agent's report is duplicative is also unpersuasive because the report contained evidence, not introduced at trial, which could have affected the jury's deliberations.

The district court abused its discretion in denying Harber's motion for a new trial following discovery that the case agent's report was presented to the jury during its deliberations. Because we must reverse and remand for a new trial, we do not reach the question whether the district court abused its discretion in denying Harber's motion for a severance.

REVERSED and REMANDED.

CYNTHIA HOLCOMB HALL, Circuit Judge, concurring.

I concur in the result only. I agree with the majority that, consistent with *Hughes v. Borg,* 898 F.2d 695, 700 (9th Cir.1990), reversal is warranted in this case because Agent Pollard's report contained material that was not duplicative of evidence properly admitted at trial and because the jury reported a hopeless deadlock prior to receiving an *Allen* charge. I do not agree, however, with much of the other language contained in the opinion.