UNITED STATES of America

v.

Larry SMITH, Defendant.

No. CRIM.A. 03–356–1.

United States District Court,
E.D. Pennsylvania.

May 26, 2004.

Larry Smith, Philadelphia, PA, pro se.

Howard D. Popper, Popper & Yatvin, Philadelphia, PA, for Larry Smith.

Karen L. Grigsby, U.S. Attorney's Office, Lesley B. Fitzgerald, United States Attorney's Office, Philadelphia, PA, for USA.

MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. INTRODUCTION [1]

Defendant Larry Smith ("defendant") was indicted on (1) one count of robbery of a Texaco station in violation of 18 U.S.C. §§ 1951(a), (b)(1), and (b)(3) ("Count I"), (2) one count of carjacking in violation of 18 U.S.C. § 2119 ("Count III"), (3) two counts of brandishing a firearm during the commission of a crime of violence (i.e., robbery and carjacking) in violation of 18 U.S.C. 924(c) ("Count II" and "Count IV"), and (4) one count of felon in possession of a weapon in violation of 18 U.S.C. § 922(g)(1) ("Count V"). Following a jury trial, the defendant was convicted of Counts I, II, III, and IV.[2]

Following the verdict, defendant filed a motion for a new trial alleging that the he was entitled to a new trial on three grounds: (1) juror Robert Simon ("Simon") had failed to reveal during *voir dire* that he was a close friend of a member of the U.S. Attorney's Office who happened to be prosecuting a case in another courtroom in the building during the defendant's trial; (2) Simon failed to disclose that he dined with his friend (the member of the U.S. Attorney's Office) during deliberations in the defendant's case; and (3) Simon's eagerness to conclude the deliberations in this case, so that he could go to another courtroom and observe his close friend (the one in the U.S. Attorney's Office) during closing arguments in another criminal case, rendered him unable to sit as a fair, unbiased, and undistracted juror. The defendant sought an evidentiary hearing to flesh out these grounds for relief. Although the Government concurred with the defendant's assessment that an evidentiary hearing was necessary to resolve this matter, the Government argued that neither the actual facts of this case (as would be uncovered at such a hearing) nor the applicable case law supported the defendant's motion for a new trial.

The court held an evidentiary hearing in which it heard testimony from Assistant United States Attorney Lesley Fitzgerald, Robert Simon (the juror in question), Assistant United States Attorney Robert Zauzmer, F.B.I. Agent Joseph Majorowitz, and Cathy Henry, Esq. (counsel for co-defendant Ronald Smith), and argument from counsel. Based on the testimony, documentary evidence, and argument at the hearing, as well as the written submissions of counsel, the court concludes that defendant's motion for a new trial should be denied because the defendant failed to show either juror or prosecutorial misconduct. Moreover, even assuming any juror or prosecutorial misconduct occurred in this case, the defendant did not suffer any prejudice.

## II. FINDINGS OF FACT

On September 29, 2003, on the same afternoon the jury rendered its verdict in this case, juror Robert Simon approached AUSA Lesley Fitzgerald, the Government prosecutor, outside of the courthouse and engaged her in conversation. Cathy Henry, counsel for Ronald Smith, and Agent Majorowitz were present during most of their conversation. Simon told Fitzgerald that he knew AUSA Robert Zauzmer and that he had run into Zauzmer over the previous weekend at services at their synagogue.[3] Simon stated that he had told Zauzmer that he was selected to sit on a

---

**1.** This memorandum memorializes in a slightly edited form the decision delivered from the bench.

**2.** The Government decided not to pursue Count V of the indictment after a guilty verdict was returned on the other four counts. Therefore, Count V has been dismissed.

**3.** *See* H.T. 3/9/04, at pp. 22–23.

federal jury. Simon also expressed to Fitzgerald his disappointment that the closing arguments in another case that was being tried in the federal courthouse at the same time as the instant case, and in which Zauzmer was Government counsel, had already occurred by the time this case had finished, since he would like to have seen Zauzmer's closing arguments in that case. Henry reported the conversation to counsel for Larry Smith. Based on Henry's recollection of the conversation, the defendant filed the instant motion for a new trial.

At the evidentiary hearing, both Simon and Zauzmer testified concerning the specifics of their relationship. Both stated that they are not "close friends." But rather, Simon testified that Zauzmer was an "acquaintance" and Zauzmer described Simon as an "acquaintance" or "friend."[4] Both Simon and Zauzmer testified that they know each other because they attend the same synagogue and that they did not otherwise socialize with each other outside of their religious affiliations.[5] Simon further testified that he did not mention to the other jurors that he knew Zauzmer and he denied that his relationship with Zauzmer had affected his ability to be impartial when deliberating in this case.

With respect to Simon's approach of Zauzmer at the synagogue, their testimony (although slightly different) described their meeting in a consistent manner. Viewing the testimony in the light most favorable to the defendant, at the synagogue, Simon approached Zauzmer telling him that he was on a federal jury in a criminal case before Judge Robreno, which

was being prosecuted by Fitzgerald.[6] Simon also mentioned that the jury was deliberating.[7] Zauzmer responded by telling Simon to get away from him. Simon said he felt "dumbfounded" and "hurt" by Zauzmer's reaction to him.[8] Simon in turn approached Zauzmer's wife, telling her that Zauzmer was being "mean to [him]."[9] After talking with Zauzmer about what had happened, Zauzmer's wife told Simon that he should not talk to Zauzmer that evening. Both Simon and Zauzmer testified that Simon did not discuss the case with Zauzmer. Neither Simon or Zauzmer reported their conversation to the court or to Fitzgerald.

Simon further testified that after the verdict was returned in the case, he called Zauzmer to talk about the case. Simon stated that the reason he called Zauzmer after the verdict was returned was "to close out the matter on a friendly basis."[10] Zauzmer was tangentially connected to this case, in that Fitzgerald had consulted with Zauzmer on a legal issue with respect to this case before trial had begun.

## III. Conclusions of Law and Analysis

The defendant focuses on two arguments in support of his motion for a new trial: (1) a new trial based on juror misconduct should be granted because Simon violated the court's order not to discuss the case and his client was prejudiced by the juror's resulting partiality; and (2) a new trial based upon prosecutorial misconduct should be granted because of Zauzmer's failure to report the incident with Simon to the court or to Fitzgerald, who in

---

4. *See* H.T. 3/9/04, at pp. 30, 58–59.

5. *See* H.T. 3/9/04, at pp. 30–31, 59.

6. Simon also stated that Ms. Henry was a defense attorney on the case.

7. *See* H.T. 3/9/04, at p. 61.

8. *See* H.T. 3/9/04, at pp. 32, 53.

9. *See* H.T. 3/9/04, at p. 32.

10. *See* H.T. 3/9/04, at p. 55.

turn would have had a duty to report the incident to the court.

Parenthetically, however, prior to the evidentiary hearing, the defendant also argued (as an additional ground for a new trial) that Simon may have been improperly influenced by his desire to hear the closing arguments in the case of *United States v. Shusterman*, a case involving defalcation of large sums by an employee of a local synagogue, which was widely discussed in the Jewish community and was being tried by Zauzmer in September of 2003 (at about the same time of the trial of the defendant). Simon testified at the hearing however that, although he knew Zauzmer was prosecuting the *Shusterman* case and he was curious about the case, he did not know the case's status while he was on the jury in the defendant's trial. The defendant, therefore, does not press this issue any further in his post-hearing brief in support of his motion for a new trial.

Similarly, the defendant appears to have abandoned the argument that a new trial should be granted because of an error in *voir dire*. Prior to the hearing, the defen-

dant argued that there was an error in *voir dire* because Simon failed to disclose his relationship with Zauzmer during the *voir dire* process. However, under *United States v. Hodge*, 321 F.3d 429 (3d Cir. 2003), "to receive a new trial because of errors during *voir dire*, [a defendant] 'must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause.'" *Id.* at 441 (quoting *McDonough Power Equip. Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984)).

In the instant case, the transcript reveals that the jurors were not specifically asked a question in response to which Simon should have disclosed his relationship to Zauzmer. Furthermore, at the hearing, defense counsel conceded that the jurors were not asked whether or not they had a relationship with anyone from the U.S. Attorney's Office.[11] Thus, there is no evidence that Simon failed to answer a material question truthfully during *voir dire*. As such, the defendant appears to have abandoned this issue.[12]

---

11. *See* H.T. 3/9/04, at p. 6.

12. Even if the court were to take the view that Simon should have revealed his relationship with Zauzmer from the "totality of the circumstances" of the entire *voir dire* process (as defense counsel suggests), a new trial would not be required under *Hodge* because the relationship between Simon and Zauzmer (that of *fellow congregation members*) is not one which would provide a valid basis for Simon's dismissal for cause. *See United States v. Calabrese*, 942 F.2d 218, 223 (3d Cir.1991) (finding that "the central inquiry" of challenges of potential jurors for cause is "whether a particular, or individual juror is able to 'faithfully and impartially apply the law'."). Merely knowing one of the defendants, the victim, or other participant in the proceedings does not, by itself, constitute the requisite showing of bias required for a dismissal for cause. *See id.* at 224–25; *see, e.g. United States v. Kelton*,

518 F.2d 531, 533 (8th Cir.1975) (finding that a juror's acquaintance with defendant's family was too attenuated to support a finding of "actual prejudice"); *Howard v. Davis*, 815 F.2d 1429, 1431 (11th Cir.1987) (finding it was not an abuse of discretion for the trial court to refuse to excuse a juror for cause who was a "close friend" of the victim); *United States v. Frank*, 901 F.2d 846, 849 (10th Cir.1990) (finding no abuse of discretion where juror was an acquaintance of one of the prosecutors in the case). Rather, before dismissing a juror for cause, the district court must make further inquiry on the record to determine whether the juror can be impartial.

In the instant case, Simon was probed as to his impartiality at the evidentiary hearing. He testified that knowing Zauzmer in no way influenced his deliberations in the defendant's case, nor did it influence how he viewed the evidence. H.T. 3/9/04, at p. 36. Therefore,

As will be discussed below, looking at the facts adduced at the hearing and the applicable case law, it is clear that none of the arguments advanced by the defendant post-hearing has any merit either.

## A. Alleged Juror Misconduct

Whether or not the defendant is entitled to a new trial based on Simon's alleged misconduct is controlled in part by the United States Supreme Court's decision in *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). In *Smith,* a state habeas case, the defendant sought a new trial based on the post-verdict revelation that the prosecution had withheld knowledge that one of the deliberating jurors had submitted an application for employment as an investigator in the District Attorney's Office during the defendant's trial. *Id.* at 212–13, 102 S.Ct. 940. The Court found that, in order to show a due process violation based on allegations of juror partiality, the defendant had to show that the juror who sent the resume was actually biased against him. *Id.* at 215–18, 102 S.Ct. 940 ("[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."). Since the state trial judge had ruled that the offending juror was not actually biased, *id.* at 213–14, 102 S.Ct. 940, the defendant was not denied due process. *Id.* at 217–18, 102 S.Ct. 940. The Court noted that "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Id.* at 217, 102 S.Ct. 940.

In this case, the defendant focuses on what he alleges was Simon's juror misconduct in disregarding the court's "repeated and unequivocal order" not to discuss this case and in "seeking out a member of the prosecutor's office" in order to discuss the case. The defendant alleges that, because of this misconduct, he was prejudiced (and his trial thus affected) by Simon's partiality. More specifically, defendant alleges that because Simon was rebuffed by Zauzmer causing Simon to be "dumbfounded" and "hurt," Simon felt the need to ingratiate himself with Zauzmer (and curry favor with the prosecution). This partiality was evident by: (1) Simon's appeal to Zauzmer's wife and (2) Simon's phone call to Zauzmer after the verdict to "close out the matter on a friendly basis." The court concludes that this argument is without merit.

It is debatable whether or not Simon violated the court's order simply by revealing to Zauzmer that he was on a federal jury and telling him the names of the attorneys involved in the case. At best, it was a one-way conversation. However, even assuming that Simon's conduct did violate the court's order, there is no evidence of prejudice, i.e. juror partiality or bias. Simon testified at the hearing that he was fair and impartial at all times and that his relationship with Zauzmer did not affect the deliberations in this case. The court observed the witness' demeanor while on the stand and found his testimony credible. Given the court's credibility finding and in the absence of any objective facts which would undermine Simon's professed impartiality, the court finds that the defendant has failed to show Simon was actually biased against him.[13]

---

defendant was not prejudiced by not knowing of Simon's acquaintanceship with Zauzmer during *voir dire* since, based on Simon's credible assertions that he was impartial, there would have been no legal basis to excuse

Simon for cause merely because he attends the same synagogue as Zauzmer.

13. The defendant argues that Simon's profession of impartiality is undermined by the fact that his testimony comes several months after

■ Defendant further argues that, because the misconduct in this case involved an alleged conversation between a juror and a third person during deliberations (unlike the misconduct in *Smith v. Phillips*), a "presumption of prejudice" should attach in this case, and therefore it is the Government's burden to prove that the conversation was harmless. The Third Circuit in *United States v. Console* concluded that the Supreme Court's decision in *Smith v. Phillips* did not overrule the presumption of prejudice articulated in *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), arising in criminal cases in which there is contact with a juror during a trial about a matter pending before the jury. *See United States v. Console*, 13 F.3d 641, 666 (3d Cir.1993) (citing *United States v. Boylan*, 898 F.2d 230, 261 (1st Cir.) ("the Remmer standard should be limited to cases of significant ex parte contacts with sitting jurors or those involving aggravated circumstances far beyond ... [the exposure to media coverage] shown here"), cert. denied, 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990)); *see also Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954). Instead, the Third Circuit found that the presumption was applicable in that case because there was direct communication between a juror and a third-party during deliberations. *Console*, 13 F.3d at 666. Assuming *arguendo* that Simon did violate the court's order not to discuss the case, the presumption of prejudice would apply here.[14] Further, if the presumption attaches, the Government has the burden of establishing (after notice and hearing) that the contact was harmless to the defendant. *Remmer*, 347 U.S. at 229, 74 S.Ct. 450. In considering whether the government has rebutted the presumption of prejudice, the court should make its "determination on the basis of an objective analysis by considering the probable effect of the allegedly preju-

---

the verdict and with the benefit of four to five conversations with Zauzmer to "discuss his testimony" and the hearing and two conversations with Assistant United States Attorney Karen Grisby (counsel for the Government). *See* H.T. 3/9/04, at p. 39. Furthermore, the defendant suggests that the posture of the hearing may have alerted Simon to problems with his conduct and how to avoid further accusations of wrongdoing. According to the defendant, Simon's statement that he was impartial should not be believed because Simon's alleged direct violation of the court's order shows that he is not an "honest man." *See Smith*, 455 U.S. at 217 n. 7, 102 S.Ct. 940 ("[S]urely one who is trying as an *honest man* to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter.") (emphasis added). These arguments, are wholly speculation. As discussed above, there is no indication that Simon was being anything other than truthful during the hearing and there is no other evidence to support the proposition that Simon was somehow being dishonest. Also, not helpful to the defendant's argument that juror Simon was trying to curry favor with the prosecution is the fact that the jury acquitted Ronald Smith, the co-defendant, of all charges.

14. The Government argues that the "presumption of prejudice" articulated in *Remmer* should not be applied in this case. As explained in *United States v. Lloyd*, the Third Circuit has applied the presumption of prejudice "only when the extraneous information [presented to the jury] is of a considerably serious nature.... In particular, [courts] have tended to apply the presumption of prejudice when a juror is directly contacted by third-parties." *United States v. Lloyd*, 269 F.3d 228, 238 (3d Cir.2001) (citing *United States v. Console*, 13 F.3d 641, 666 (3d Cir.1993)). Because the Third Circuit in *Console* found that the application of the presumption of prejudice is appropriate when is there is direct communication between a juror and a third-party during deliberations, *Console*, 13 F.3d at 666, and we are assuming that inappropriate communication occurred in this case, the presumption of prejudice should be applied here.

dicial information on a hypothetical average juror." *Console*, 13 F.3d at 666 (citing *United States v. Gilsenan*, 949 F.2d 90 (3d Cir.1991)).

Applying the *Remmer–Console* analytical framework to this case does not change the outcome. Since the presumption of prejudice is effectively rebutted by a juror's credible profession of impartiality, and the court so found in this case, the contact between Zauzmer and Simon was necessarily harmless.[15] *See Console*, 13 F.3d at 667–69 (finding that the district court had not abused its discretion in finding that defendant was not prejudiced by legal advice given to a juror by her attorney sister-in-law about the case, which the juror imparted to other jurors, because a *voir dire* of the jurors revealed that the jurors paid no attention to the comment); *see also United Stated v. Boscia*, 573 F.2d 827, 832 (3d Cir.1978) (finding presumption of prejudice rebutted where a juror who learned that a dismissed juror had been contacted by an investigator for defendant had "emphatically" stated she was not prejudiced against the defendants as a result of her knowledge of the call).

The cases cited by the defendant from other circuits do not support his position to the contrary. The defendant cites *Caliendo v. Warden of California Men's Colony*, 353 F.3d 1147, 1153 (9th Cir.2004) for the proposition that where the court finds that

juror misconduct has occurred, a motion for new trial must be granted unless the court concludes that the misconduct clearly was not prejudicial.[16] The Ninth Circuit concluded that the state court's refusal to presume prejudice (in a case in which there was conversation between a detective/witness in the case and three jurors during jury deliberations) was error and that the burden should have been on the government to prove that "the contact was clearly not prejudicial." *Id.* at 696–98. Since, in this case, the court has placed the burden of proof on the Government, *Caliendo* does not affect the result.[17]

Similarly, the Eighth Circuit in *United States v. Willis*, 277 F.3d 1026, 1034 (8th Cir.2002) merely restates the general rule not in dispute here that contact with a juror by a third party during trial about the case before the jury is presumptively prejudicial. Here again, because there is no evidence that Simon was in any way biased and the presumption of prejudice that may have attached was effectively rebutted by Simon's credible assertions of impartiality, the court finds that the defendant was not prejudiced by the alleged juror misconduct.

## B. Alleged Prosecutorial Misconduct

The defendant's second argument is that Zauzmer should have notified the court or his fellow prosecutor of juror Simon's im-

---

**15.** The court's finding of harmlessness would be further supported by the fact that the partiality of a hypothetical juror would not be affected by the minimal contact between Zauzmer and Simon.

**16.** Although pointedly ignored by the defendant, this opinion has been withdrawn and superceded on rehearing en banc. *See Caliendo v. Warden of Calif. Men's Colony*, 365 F.3d at 696–98 (9th Cir.2003).

**17.** The burden placed on the Government by the Ninth Circuit appears to be heavier than

the standard set by this circuit in *Console*. The Ninth Circuit does not cite any Supreme Court precedent for its imposition of a stricter burden than the burden as stated in *Remmer*. *See Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954) ("The presumption [of prejudice] is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.") (citing *Mattox v. United States*, 146 U.S. 140, 148–150, 13 S.Ct. 50, 36 L.Ed. 917 (1892)).

proper conduct and that his failure to do so warrants a new trial. This argument has no merit. In *Smith v. Phillips*, as described above, the Supreme Court found that the prosecution's failure to disclose the juror's application to the District Attorney's Office did not require a new trial because the non-disclosure had no effect on the defendant's trial. *Id.* at 219, 102 S.Ct. 940 ("The touchstone of due process analysis is the fairness of the trial, not the culpability of the prosecutor").

■ Applying *Smith* to the instant case,[18] even assuming that any prosecutorial conduct occurred, because the court finds that Simon's impartiality was not compromised by his conversation with Zauzmer, the defendant was not deprived of a fair trial.[19] *See McDonough Power Equip. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (stating that "only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial").

## IV. CONCLUSION

For the foregoing reasons, the court concludes that, because the defendant suffered no prejudice and the fairness of his trial was not implicated by the contact between Simon and Zauzmer, the defendant's motion for a new trial shall be denied.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 26 day of May, 2004, it is hereby ordered that defendant's motion for a new trial (doc. no. 74) is **DENIED.**

**AND IT IS SO ORDERED.**

---

**18.** At the outset, defendant argues that *Smith v. Phillips* is not applicable to the alleged prosecutorial misconduct in this case because *Smith* is limited to instances in which federal courts are reviewing determinations of state courts. Thus, because *Smith* was a state habeas case and federalism concerns were therefore present, the defendant argues that its teachings are inapplicable to a federal prosecution. The defendant misreads the case. Although the Court in *Smith* did express concerns about federal courts overturning a state court conviction where no constitutional violation occurred, *see id.* at 220, 102 S.Ct. 940, the opinion clearly dictates that a violation of due process occurs only when the fairness of the defendant's trial is implicated. *Id.* at 219, 102 S.Ct. 940. There is no basis in the opinion to conclude that the constitutional standards propounded in that opinion apply

differently in state court than they do in federal court. The defendant's attempt to distinguish *Smith* is further belied by the fact that the Supreme Court expressly concluded in *Smith* that, "It seems to us to follow 'as the night the day' that if in the federal system a post-trial hearing such as that conducted here is sufficient to decide allegations of juror partiality, the Due Process Clause of the Fourteenth Amendment cannot possibly require more of a state court system." *Smith,* 455 U.S. at 218, 102 S.Ct. 940.

**19.** In any event, had Zauzmer disclosed his conversation with Simon to the court, the remedy would have been a hearing at which the defendant would be afforded the opportunity to prove actual bias—the remedy the defendant received in this case.